**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION ) ) ) Plaintiff, ) v. ) ) KARAOKE KANDY STORE, INC., et al. ) ) Defendants. ) | CIVIL ACTION NO.: 1:10-CV-00990-LW<br><br>JUDGE DONALD C. NUGENT<br><br>**PLAINTIFF'S TRIAL BRIEF** |

-----------------------------------------------------------

Pursuant to the Court's Civil Trial Order (Dkt. # 90), plaintiff Slep-Tone Entertainment Corporation ("Slep-Tone" or "Plaintiff") hereby files its trial brief.

**A.   Statement of the Facts**

   **1.   Plaintiff's Activities**

Slep-Tone is a leading manufacturer and distributor of karaoke accompaniment tracks, which provide the background music for karaoke performances of popular song titles.  Slep-Tone distributes these tracks in special encoded formats known as "CD+G" (compact disc plus graphics) or MP3+G (MP3 plus graphics); both are distributed on physical compact discs.  These special formats permit lyrics and other graphical information to be displayed on a screen when a track is performed, as an aid to the singer.  Operating under the trade name "Sound Choice," Slep-Tone sells its compact discs to karaoke jockeys ("KJs") who use the discs and the content stored thereon to put on karaoke shows.  Slep-Tone sells its products through retail distribution channels and on the internet at www.soundchoicestore.com.

Slep-Tone owns two federal trademark registrations that are at issue in the present suit:  Registration No. 1,923,448, first registered October 3, 1995, for the

trademark SOUND CHOICE, and Registration No. 2,000,725, first registered September 17, 1996, for a display trademark as follows:



Both registrations specify that the marks are attached to "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video relating to musical compositions."

Slep-Tone uses these marks, which it refers to as "the SOUND CHOICE marks," in several ways in connection with its products. Slep-Tone marks its compact discs directly with the SOUND CHOICE marks. Slep-Tone also encodes its compact discs in such a manner as to cause the graphics portion of its karaoke accompaniment tracks to display the SOUND CHOICE marks when the track is played, generally at the beginning and the end of the song, and perhaps during the song if there is a "musical break," a period with no vocals. For that reason, when a Slep-Tone-produced karaoke track is played using equipment that includes a video display, the SOUND CHOICE marks appear on the video display. The SOUND CHOICE marks, along with other aspects of the graphical display, distinguish Slep-Tone's tracks from those of other manufacturers to users of the tracks.

Slep-Tone has provided the public with notice that the SOUND CHOICE marks have been federally registered through the consistent display of the symbol ® with the SOUND CHOICE marks as used on its goods. More importantly to this suit, at all times relevant to their conduct at issue, the Defendants were on at least constructive and

- 2 -

probably actual notice of Slep-Tone's registrations and claims of right in the SOUND CHOICE marks.

Slep-Tone only sells its karaoke tracks on compact discs; it does not sell downloads, preloaded hard drives, or any media other than compact discs. Historically and presently, Slep-Tone has taken the position that any unauthorized reproduction of a SOUND CHOICE-branded compact disc is a violation of applicable laws. More recently, Slep-Tone has established a mechanism whereby a disc owner, an end user of the content stored on the discs, can obtain the permissions Slep-Tone can grant, as a prerequisite for duplicating the content of the discs to another medium for convenience. That mechanism, known as Slep-Tone's Media-Shifting Policy, requires that the end user own and maintain possession of the discs whose contents are shifted to the new medium, that the shift be conducted on a 1:1 correspondence basis (copy-for-original), that the end user notify Slep-Tone that a media-shift has occurred or will occur, and that the end user submit to a verification audit of the end user's compliance with Slep-Tone's policies.

### 2. Defendants' Activities

Defendants Charles Polidori ("Polidori") and Karaoke Kandy Store, Inc. ("KKS") were and are in the business of distributing karaoke equipment, particularly including specialized karaoke hardware. The Defendants additionally distribute karaoke accompaniment tracks produced by a number of different manufacturers, including Slep-Tone. Although the Defendants have on occasion sold and distributed karaoke compact discs, their distribution activities have also included the preloading of karaoke tracks onto the specialized karaoke hardware that they then sell to end users. In order

to accomplish the preloading and distribution tracks, Polidori and KKS obtained bona fide SOUND CHOICE compact discs manufactured by Slep-Tone and, without authorization from Slep-Tone, used the tracks on those compact discs as templates for making new electronic files that duplicate the content of those karaoke tracks substantially exactly.  These electronic files were then loaded onto hard drives, data DVDs known as "Super CDGs," and other electronic storage media and devices.  These hard drives, DVDs, and electronic storage media and devices were then sold to end users, who use the electronic files in much the same way they would bona fide SOUND CHOICE discs.

Functionally, the electronic files are exact copies of the tracks stored on bona fide discs.  As such, the electronic files are encoded to display the SOUND CHOICE marks onscreen in exactly the same way that bona fide tracks would.  The difference, however, is that Slep-Tone did not make or authorize the making of the electronic files, nor did it authorize the Defendants to attach the SOUND CHOICE marks to the Defendants' own products.  Slep-Tone did not receive a royalty on the products the Defendants made.

Although it would have been a violation of Slep-Tone's Media-Shifting Policy for Polidori and KKS to distribute media-shifted tracks *along with* the original CDs, perhaps as a "shifting" service offered as a convenience to its customers, such activities probably could have been tolerated with some effective controls in place.  However, the Defendants' sales of this equipment were not accompanied by the delivery of corresponding original discs to their customers.  Simply put, the electronic files the Defendants made and marked with the SOUND CHOICE marks were repeatedly loaded

onto the media the Defendants sold, again and again, without any further investment on their part.

Because Polidori and KKS had no substantial input costs associated with these electronic files—no royalties, no ongoing need to buy corresponding original discs—they could offer their customers thousands of karaoke tracks as an inducement to buy the expensive equipment they sold.

### 3. Contact Between the Parties and Spoliation of Evidence

For several years before the filing of the present suit, Slep-Tone suspected that Defendants were engaged in the activities identified above. Slep-Tone investigated the matter and notified members of the karaoke industry to be on the lookout for infringements from Kandy Store. On September 10, 2007, Polidori and KKS's attorney, Michael G. Polito, sent a letter to Kurt Slep, Slep-Tone's CEO, demanding that Mr. Slep cease and desist from making accusations of copyright infringement against Defendants and threatening litigation. On September 25, 2008, Defendants were served with a letter from the Karaoke Industry Alliance of America (KIAA) that litigation concerning their infringement of trademarked karaoke recordings was likely and that certain evidence was to be produced.  The present suit was filed on May 3, 2010 and was coupled with the service of spoliation letters.

Despite being warned, the Defendants have engaged in pervasive document destruction or concealment that has made it impossible for Slep-Tone to quantify the degree to which the Defendants engaged in the behavior of which they stand accused.

### 4. Slep-Tone's Copyright Licenses

The Defendants have raised the Clean Hands doctrine as an affirmative defense to the Plaintiff's trademark infringement and related claims.  Notably, the Defendants do

not assert that Slep-Tone engaged in fraud in the acquisition or assertion of the trademark rights that are at issue in this suit, and there is not even a hint of evidence to that effect.

Rather, the Defendants' accusation of unclean hands is based upon its assertion that Slep-Tone has committed acts of copyright infringement against the rights of music publishers, the entities that own the composition copyright in most popular music titles. Between 1987 and 2009, Slep-Tone recorded more than 18,000 karaoke accompaniment tracks. As may be expected under the circumstances, there have been business disagreements with music publishers about license and royalty obligations. Each time Slep-Tone was sued by a publisher prior to 2013, it has resolved the lawsuit to the satisfaction of the publisher.[1]

In May 2007, Slep-Tone sold its existing catalog of karaoke music masters and certain business lines to Stingray Digital Music Group, of Montreal, Canada, and received from Stingray a license in the old catalog. This straightforward and common transaction required, among other things, that the licensing status of each master be ascertained, prior to the transaction's closing. As such, the combination of Slep-Tone's settlements with publishers, the processes undertaken with respect of the Stingray sale, and the availability of United Kingdom-originated licensing for U.S-based sales has rendered Slep-Tone's activities since that time free of copyright infringement.

---

[1] Slep-Tone is presently a defendant in copyright infringement litigation with a group of publishers that operate under the EMI umbrella; that suit is in its early stages. More than 90% of the composition copyrights EMI claims Slep-Tone infringed have not even been sold since 2008; the earliest reach under the statute of limitations is 2010. Slep-Tone anticipates obtaining a dismissal of that litigation on that basis.

**B.     Controlling Law**

Slep-Tone has asserted four claims for relief: federal trademark infringement, federal unfair competition, deceptive trade practices under Ohio law, and Ohio common law trademark infringement.

**1.     Federal Trademark Infringement**

This claim is governed by the federal trademark statute, the Lanham Act. In order to establish a *prima facie* case of federal trademark infringement against Defendants, Slep-Tone must show that (1) it has a valid mark entitled to protection under the Lanham Act; and (2) Defendants used in commerce a reproduction, counterfeit, copy, or colorable imitation of Slep-Tone's registered mark in a way that would likely cause confusion among the relevant consuming public. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114-15 (2d Cir. 2006); *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996). A trademark is a "registered mark" for purposes of the Lanham Act if it has been "registered in the United States Patent and Trademark Office under this chapter." *15 U.S.C. § 1127*.

Slep-Tone's marks were registered in 1995 and 1996; suitable affidavits were timely filed pursuant to 15 U.S.C. §§ 1058, 1059, and 1065, maintaining the registrations and rendering them incontestable, and entitling them to a conclusive presumption of validity.

By affixing the SOUND CHOICE marks—not an imitation of the marks, but identical copies used in the same way—to the Defendants' own electronic files, so that the marks are displayed when the electronic files are played, the Defendants have used counterfeit marks.

The Trademark Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. The term "counterfeit mark" means "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered."

The Defendants' electronic files contain "video relating to musical compositions," which is part of the goods recited in the trademark registrations, and it is the video that the Defendants have marked. Because those electronic files and the marks they contain were copied—essentially "traced"—from Slep-Tone's CD+Gs and are substantially indistinguishable therefrom, the Defendants have manufactured counterfeits of Slep-Tone's registered marks, within the meaning of the Trademark Act.

The use of counterfeit marks is likely to cause confusion, mistake, or to deceive the public because the entire purpose of a counterfeit good is to mislead, deceive and confuse customers and the public as to the origin and authenticity of the goods offered. For this reason, courts have found that counterfeits are inherently likely to deceive consumers that have come to recognize the registered marks. *See Phillip Morris USA Inc. v. Lee*, 549 F. Supp. 2d 839, 849 (W.D. Tex. 2008); *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d. 995, 1007 n. 11 (S.D. Tex. 2000) (finding a likelihood of confusion existed where the defendants "sold counterfeit products on which plaintiff's registered marks appear in their entirety"); *Philip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) ("[C]ounterfeit marks are inherently confusing."); *Gucci Am. Inc. v. Duty Free Appeal, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("[C]ounterfeits, by their very nature, cause confusion."). Where the

- 8 -

goods at issue bear counterfeit marks that are "identical with or substantially indistinguishable from" the registered marks, *Rolex Watch USA Inc. v. Meece*, 158 F.3d 816, 826 (5th Cir. 1998) (quoting *15 U.S.C. § 1127*), it is inherently likely that these goods are likely to cause confusion, mistake, or to deceive the public.

In view of the foregoing, it is respectfully submitted that Slep-Tone has established a *prima facie* case of federal trademark infringement involving counterfeiting against the Defendants.

### 2. Federal Unfair Competition

This claim also is governed by the Lanham Act. Defendants' acts of selling and offering for sale counterfeit Slep-Tone sound tracks constitute false designation of origin, false description, and false representation that the counterfeit sound tracks were made or are sponsored, approved, or authorized by Slep-Tone, in violation of 15 U.S.C. § 1125(a).  KJs who purchased SOUND CHOICE recordings from Defendants would be led to believe, falsely, that Defendants' goods were made, sponsored, approved, or authorized by Slep-Tone.  Similarly, members of the public who attended a karaoke show where Defendants' copies of SOUND CHOICE recordings were performed or played would be confused as to sponsorship, approval, or authorization by Slep-Tone since the SOUND CHOICE marks are prominently displayed during performance.

### 3. Ohio Deceptive Trade Practices and Common Law Trademark Infringement

Ohio's deceptive trade practices statute is found in Chapter 4165, O.R.C. which states in pertinent part that:

> "A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:
>
> (1) Passes off goods or services as those of another;
>
> (2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (3) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;
>
> \* \* \*
>
> (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have."

Section 4165.02(A), O.R.C.

Claims of deceptive trade practices under Ohio law and common law trademark infringement are considered encompassed by the federal trademark infringement analysis. *See Victoria's Secret Stores v. Artco Equip. Co.*, 194 F. Supp. 2d 704, 724 n. 8 (S.D. Ohio 2002) ("The Court notes the same analysis applies to [federal] trademark infringement, unfair competition, Ohio common law, and Ohio's deceptive trade practices statutes.") Such actions also constitute a violation of Ohio's consumer protection law, since deceptive acts are occurring in connection with consumer transactions. *Coach, supra,* 2010 U.S. Dist. LEXIS 45087 at 12.

**4.     Remedies**

Slep-Tone has disclaimed any damages in this matter and is seeking only injunctive relief.  Specifically, Slep-Tone seeks an injunction against Polidori and KKS, and all those acting in concert with them or on their behalf who have knowledge of the injunction, by which the Defendants are prohibited from making, using, selling, or

otherwise distributing karaoke accompaniment tracks that bear any of the SOUND CHOICE marks or any colorable imitation thereof, regardless of form or format (other than on compact discs of which Slep-Tone is the legal origin), without Slep-Tone's express written permission.

The Trademark Act provides:

> The several courts vested with jurisdiction of civil actions arising under this Act shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 43 [15 USC § 1125].

15 U.S.C. § 1116(a).

A plaintiff seeking a permanent injunction must demonstrate (1) that it has suffered irreparable injury; (2) that there is no adequate remedy at law; (3) "that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) it is in the public's interest to issue the injunction. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Irreparable harm normally follows when there is a likelihood of confusion. *See Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381-82 (6th Cir. 2006).

The Sixth Circuit has explained that where there is potential for future harm from infringement, there is no adequate remedy at law. *See Audi AG*, 469 F.3d at 550. No injunction was in place when the Defendants were selling their counterfeit goods; in the absence of an injunction, they are likely to continue selling those goods.

There is no harm to the Defendants, because they will only be enjoined to follow the law.  *See id.* (no harm in having to refrain from willful trademark infringement).  Likewise, the public interest will be served by issuance of the injunction.  Trademark enforcement and prevention of customer confusion are inherently in the public interest.  *See Park'N Fly, Inc.v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985).

**C.**     **Proposed Witnesses and Expected Subject Matter of Testimony**

**Kurt Slep.**  Mr. Slep expects to testify concerning Slep-Tone's business, its ownership of the trademarks in suit, and Slep-Tone's efforts to enforce its rights.

**Jeff DeLeeva.**  Mr. DeLeeva is expected to testify about the Defendants' business operations, including the equipment sold and the content thereof.

**Rob Schumaker.**  Mr. Schumaker is expected to testify about the Defendants' business operations, including his personal activities in carrying out the Defendants' infringing activities.

**Charles Polidori.**  Mr. Polidori is expected to testify about his business operations and those of KKS, including his personal activities and those of the employees and others whom he supervised, and about the products that he and KKS sold to others.

**David Sems.**  Mr. Sems is expected to testify as a fact witness regarding his review of certain computer equipment sold by the Defendants and the contents thereof.

The Plaintiff reserves the right, in its case-in-chief, to call any witness designated by the Defendants.

**D.     Proposed Exhibits**

Exhibit 1 Declaration of Wayne D. Porter, Jr. 5/27/11

Exhibit 2 Declaration of Kurt Slep 8.10.10 and attached exhibits

Exhibit 3 Declaration of James A. DeRoche 8.9.10

Exhibit 4 Declaration of Wayne D. Porter, Jr. 8.10.10 and attached exhibits

Exhibit 5 Declaration of Wayne D. Porter, Jr. 10.16.10

Exhibit 6 Email chain Okuley/ Porter, Sept. 2010

Exhibit 7 Karaoke Kandy Store SOS Registration

Exhibit 8 Photo of Karaoke Kandy Store

Exhibit 9 Photo of Karaoke Kandy Store

Exhibit 10 American, Inc. v. Kandy Store – Docket

Exhibit 11 Declaration of Kurt Slep 8.8.11

Exhibit 12 Declaration of Wayne D. Porter, Jr. 8.8.11

Exhibit 13 David Sems Report

Exhibit 14 Exhibits A-I to Sems Report

Exhibit 15 Email Okuley/Porter, Aug. 2010

Exhibit 16 Email Okuley/Porter, Sept. 2010

Exhibit 17 Defendant's response to Plaintiff's Interrogatories to Polidori

Exhibit 18 Defendant's response to Plaintiff's Interrogatories to Kandy Store

Exhibit 19 Defendants' response to Plaintiff's Document Requests

Exhibit 20 Cease & Desist Letter to Kandy Store

Exhibit 21 Email – Okuley, July 12, 2011

Exhibit 22 Joseph Polidori, Sr. Subpoena

Exhibit 23 Joseph Polidori, Jr. Subpoena

Exhibit 24 Email – Okuley, July 6, 2011

Exhibit 25 Light Year Music Subpoena

Exhibit 26 Objections re Light Year Music Subpoena

Exhibit 27 Defendants' supplemental response to Document Requests

Exhibit 28 Defendants' 2d supplemental response to Document Requests

Exhibit 29 DEF000543 (Photo of "junk computers")

Exhibit 30 Polito Letter to Kurt Slep

Exhibit 31 "By Hand" letter to Kandy Store

Exhibit 32 CheapKaraoke.com pages

Exhibit 33 Email – Porter's response to Okuley's July 12 email

Exhibit 34 Defendants' VE Contract & Transmittal Email

Exhibit 35 Plaintiff's VE Contract & Transmittal Email

Exhibit 36 Email – Return of Hard Drives, Aug. 11, 2011

Exhibit 37 Declaration of Steve Boone

Exhibit 38 Plaintiff's Rule 26 Disclosures

Exhibit 39 Plaintiff's Supplemental Rule 26 Disclosures

Exhibit 40 Plaintiff's 2d Supplemental Rule 26 Disclosures

Exhibit 41 Declaration of Michael Finch 8.18.11

Exhibit 42 Declaration of Kurt Slep 8.18.11

Exhibit 43 Declaration of Rob Shumaker 8.26.11

Exhibit 44 Declaration of Jeff DeLeva 8.26.11

Exhibit 45 Declaration of Kurt Slep 9.8.11

Exhibit 46 Toshiba computer hard drive

Exhibit 47 Seagate computer hard drive

Exhibit 48 CAVS Machine

Exhibit 49 Super CDG Discs

The Plaintiff may also rely on any exhibit designated by the Defendants.

**E.** **Evidentiary Issues Likely to Arise at Trial**

The parties have filed several motions *in limine.*

Slep-Tone seeks to exclude testimony or attorney arguments offered by Defendants based on spoliated evidence; testimony, other evidence, or attorney arguments related to whether or not Slep-Tone's recordings were licensed under the Copyright Laws; expert testimony or other expert evidence proffered by Defendants; and prior bad acts related to Jeff DeLeeva.

Defendants seek to exclude testimony of Tim Richissin, former Mad Pro Audio employees, and employees of Slep-Tone.  Defendants also seek to preclude David Sems from testifying as an expert and seek to prevent Slep-Tone from relying on allegedly untimely produced evidence.

**F.** **Voir Dire**

Because Slep-Tone is seeking only injunctive relief, there are no matters at law requiring the empaneling of a jury.

**G,** **Jury Instructions**

Likewise, in the absence of a jury, no jury instructions are needed.

                                                      Respectfully submitted,

Dated: October 26, 2011                s/Wayne D. Porter, Jr.
                                                      Wayne D. Porter, Jr. (#0009242)
                                                      Law Offices of Wayne D. Porter, Jr.
                                                      1370 Ontario Street, Suite 600
                                                      Cleveland, Ohio 44113
                                                      Tel:   (216) 373-5545
                                                      Fax:   (216) 373-9289
                                                      E-Mail: porter@porterpatentlaw.com

                                                      James A. DeRoche (#0055613)
                                                      Seaman Garson LLC
                                                      614 West Superior Avenue
                                                      16th Floor, Rockefeller Building
                                                      Cleveland, Ohio  44113
                                                      Tel:   (216) 696-9330
                                                      Fax:    (216) 696-8558
                                                      E-Mail: jdroche@garson.com

                                                      James M. Harrington (NC Bar No. 300050
                                                      Harrington Law, P.C.
                                                      5960 Fairview Road, Suite 400
                                                      Charlotte, NC 28210-3119
                                                      Tel:   (704) 315-5800
                                                      Fax:  (704) 625-9259
                                                      E-Mail:  jharrington@harringtonlawpc.com

                                                      Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *PLAINTIFF'S TRIAL BRIEF* was filed electronically and was served electronically on counsel for Defendants on this 14th day of August, 2013. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

                                                                s/Wayne D. Porter, Jr.
                                                                 Wayne D. Porter, Jr.